(138 P.3d 405)
No. 93,626

STATE OF KANSAS, *Appellee,* v. BRENT K. CHAMBERS, *Appellant.*

Opinion filed July 21, 2006.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, for appellant.

*Jan Satterfield,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before BUSER, P.J., LARSON, S.J., and WAHL, S.J.

BUSER, J.: Brent K. Chambers appeals from the district court's order that he register as a sex offender pursuant to the Kansas Offender Registration Act, K.S.A. 2005 Supp. 22-4901 *et seq.* (KORA). Chambers also appeals from the district court's restitution orders. We affirm in part and reverse in part.

## Factual and Procedural Background

In December 2003, Chambers was charged in Butler County with two counts of burglary, two counts of misdemeanor theft, and one count of misdemeanor criminal damage to property. The information alleged in part that Chambers had entered two residences with the intent to commit theft and had stolen women's lingerie.

Eight days later, Chambers was charged in another Butler County case with two counts of burglary to a dwelling with the intent to commit theft and had stolen women's lingerie. Both cases were ultimately consolidated.

From the inception of the litigation, the State made clear its contention that "[t]his is a sexually motivated offense." The State repeated its contention at the plea hearing in March 2004, advising the district court it would seek registration of Chambers as a sex offender pursuant to the KORA. Chambers pled guilty to the burglary counts, and the State dismissed the remaining misdemeanor counts. In stating the factual basis for his pleas, Chambers said he entered the residences to look for undergarments, he took all the "ladies underwear, undergarments" that he could find, and then went home. Because the parties could not agree on the sex offender

registration issue, the State indicated "the court will have to determine same at the time of sentencing."

In April 2004, the State filed a "Notice of Allegation of Sexually Motivated Crime." The State requested that "the Court, as trier of fact, hear evidence at time of sentencing to determine whether [Chambers] was sexually motivated when he committed the crimes of burglary beyond a reasonable doubt pursuant to K.S.A. 59-29a14 and/or K.S.A. 22-4901 *et seq.*"

The sentencing hearing was held in May 2004. Two witnesses testified in support of a finding that the crimes were sexually motivated. The first, Detective Tracy Burnett, testified on behalf of the State regarding his interview of Chambers following the offenses. During this interview, Chambers admitted he had stolen the undergarments in order to take them home and masturbate with them. Detective Burnett testified that masturbation was the only motive Chambers gave for the thefts.

A therapist, Jennifer Reid, LCSW, testified she had treated Chambers since 1999. Reid first met Chambers when he was admitted to an adolescent sex offender program "after he had perpetrated similar acts in Hutchinson." Reid testified that Chambers had a number of diagnoses, including "[o]bviously . . . a fetish disorder, which is the stealing of women's undergarments." Other diagnoses included "a voyeurism diagnosis," an indication of attention deficit hyperactivity disorder, bipolar disorder, somatoform disorder, impulse control disorder, a differential diagnosis of posttraumatic stress disorder, and personality disorder not otherwise specified.

Reid opined that Chambers' behavior would not progress to more violent acts because "I've known [Chambers] for four or five years now and his arousal patterns have not changed, his fantasies have not changed, the material to which he masturbates has not changed, it's pretty consistent." Reid testified Chambers would need therapy "[t]wo years minimum. Likely forever." She characterized the instant crimes as a relapse, saying, "It's kind of like alcoholism; it's going to have to be monitored forever." Reid also stated Chambers has a history of not taking his medication, and

that "[h]e has to take his medication. He cannot go off of these unless it's determined appropriate by the treatment team."

When asked, "[A]lthough these crimes are burglaries, you would agree that these are sexual in nature?" Reid answered, "Yes."

The sentencing judge also took testimony from the victims on the amount of restitution. The victims gave the cost to replace the stolen lingerie, and they agreed with the State that it would be difficult to put a market value on used lingerie. One parent also testified to the installation of a $350 security system in their home because "we live across the street from this young man, and our 13-year-old will not stay home by herself anymore."

The sentencing judge imposed a base sentence of 32 months' imprisonment, but pursuant to the sentencing guidelines placed Chambers on a 24-month probation. In addition to conditions of probation, Chambers was ordered to pay a total of $1,225 in restitution, which included the cost of the security system installed by one of the victim families.

In July 2004, in a continuation of the sentencing hearing, the judge found Chambers' crimes were sexually motivated and ordered that he register as a sex offender. Chambers appeals.

*Constitutionality of K.S.A. 2005 Supp. 22-4901 et seq. (KORA)*

The KORA requires registration of offenders. K.S.A. 2005 Supp. 22-4904(a)(1), (a)(3) and (a)(4). An "offender" includes any person defined as a "sex offender." K.S.A. 2005 Supp. 22-4902(a)(1) and K.S.A. 2005 Supp. 22-4904(a)(1). A sex offender includes persons convicted of a "sexually violent crime." K.S.A. 2005 Supp. 22-4902(b). "Sexually violent crime" is defined in part by listing specific offenses which include, among other crimes, rape, aggravated indecent liberties with a child, criminal sodomy, and aggravated sexual battery. See K.S.A. 2005 Supp. 22-4902(c)(1), (3), (4), and (10). Burglary is not specifically listed as a sexually violent crime under any of this statute's provisions.

K.S.A. 2005 Supp. 22-4902(c)(14), however, includes as a sexually violent crime:

"[A]ny act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated. As used in this sub-

paragraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification."

As noted earlier, the sentencing judge found beyond a reasonable doubt the burglaries Chambers committed were sexually motivated. Chambers argues that "[b]ecause K.S.A. 2003 Supp. 22-4902(c)(14) allows the punishment for a conviction to be enhanced after factual findings by the court, rather than a jury, it is unconstitutional under the rule of *Apprendi v. New Jersey*, 530 U.S. 466, [147 L. Ed. 2d 435, 120 S. Ct. 2348] (2000)." This issue is one of first impression in Kansas.

Chambers' constitutional challenge to the KORA is a question of law subject to unlimited review. See *State v. Carr*, 274 Kan. 442, 444-45, 53 P.3d 843 (2002). At the outset, "[w]hen we are presented with a claim that a statute is unconstitutional, our initial inquiry is to search for a way to uphold the statute. [Citation omitted.]" *State v. Gould*, 271 Kan. 394, 405, 23 P.3d 801(2001). An appellate court must always remember "our longstanding and well-established rules that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and that before a statute may be struck down, it must clearly appear that the statute violates the Constitution. [Citation omitted.]" *In re Care & Treatment of Hay*, 263 Kan. 822, 831, 953 P.2d 666 (1998).

In *Gould*, our Supreme Court applied *Apprendi* to K.S.A. 2000 Supp. 21-4716, a statute permitting upward durational departures if certain facts were found by the sentencing judge. 271 Kan. at 410-11. Our Supreme Court concluded that *Apprendi* recognized a constitutional "guarantee" that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation omitted.]" 271 Kan. at 405-06. The court reasoned that "Gould's jury verdict 'authorized' a sentence of 31 to 34 months for each child abuse conviction. By imposing two 68-month sentences, the district court went beyond the maximum sentence in the applicable grid box and exposed Gould to punishment greater than that authorized by the jury's verdict." 271 Kan. at 410-11. Accordingly, our Supreme

Court held K.S.A. 2000 Supp. 21-4716 violated the "notice and jury trial guarantees of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment" because, under *Apprendi,* a "judge may not impose a more severe sentence than the maximum sentence authorized by the facts found by the jury." 271 Kan. 394, Syl. ¶¶ 2, 4.

Although Gould's convictions were determined by a jury, and in the present case Chambers' convictions resulted from guilty pleas, that fact alone does not change the analysis under *Apprendi.* See *Blakely v. Washington,* 542 U.S. 296, 299-301, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004) (applying *Apprendi* analysis to sentence enhancement ordered by a sentencing judge who found additional facts not admitted to in a guilty plea); *State v. Cody,* 272 Kan. 564, Syl. ¶ 1, 35 P.3d 800 (2001) (Under *Apprendi,* a plea of guilty does not waive due process rights.).

A line of cases have applied *Apprendi* and *Gould* to sentence enhancement for sexually motivated crimes. In *State v. Anthony,* 273 Kan. 726, 45 P.3d 852 (2002), our Supreme Court considered an increase in postrelease supervision ordered by the district court upon a jury conviction for aggravated indecent liberties with a child. The court began its analysis by observing that "[p]ostrelease supervision is a component of the underlying prison sentence." 273 Kan. at 728. This did not run "afoul of the protections outlined in *Apprendi* and *Gould,*" however, because aggravated indecent liberties is "by [statutory] definition a sexually violent crime." 273 Kan. at 729. As a result, the sentencing judge "was not required to make an additional finding of fact beyond that made by the jury." 273 Kan. at 729.

This court applied *Anthony* in *State v. Allen,* 30 Kan. App. 2d 774, 48 P.3d 678 (2002), *rev. denied* 275 Kan. 965 (2003), where the defendant pled guilty and was convicted of multiple counts of aggravated indecent liberties with a child and criminal sodomy. We held the sentencing judge's order increasing postrelease supervision did not violate *Apprendi* and *Gould* because "[t]he plea to a charge of aggravated indecent liberties is a plea to a crime which is sexually violent and sexually motivated by definition. No inference is necessary." 30 Kan. App. 2d at 777. Once again, there was

"no need for any evidentiary fact finding by the court, which is prohibited by *Apprendi* and *Gould.*" 30 Kan. App. 2d at 777. See also *State v. Walker*, 275 Kan. 46, 51, 60 P.2d 937 (2003) ("The reasoning in *Allen* is persuasive."); *State v. Moore*, 274 Kan. 639, 654, 55 P.3d 903 (2002) (doubling a defendant's sentence as a persistent sex offender under K.S.A. 1997 Supp. 21-4704[j] was permissible because "all the crimes were defined by the legislature as sexually violent crimes").

In contrast, the crime to which Chambers pled—burglary—is not statutorily defined as a sexually motivated crime. Moreover, Chambers admitted only to burglarizing homes with the intent to steal women's lingerie, which does not necessarily constitute an admission to sexual motivation. See *State v. Patterson*, 25 Kan. App. 2d 245, 251, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998) (theft of women's underwear was sexually motivated because defendant "kept underwear in a locked cabinet containing pornographic materials"). Chambers' crimes were found to be sexually motivated only after an evidentiary hearing.

Given the facts and relevant case law, the sentencing judge's determination that Chambers was sexually motivated in committing the burglaries implicates *Apprendi* and *Gould* provided that the KORA's provisions are considered "a more severe sentence than the maximum sentence authorized by the facts found by the jury" or, in this case, by Chambers' plea of guilty. *Gould*, 271 Kan. at 394, Syl. ¶¶ 2, 4.

Some states which have considered this issue have held *Apprendi* does not apply to sex offender registration because registration is not a punishment. See *People v. Stead*, 66 P.3d 117, 120 (Colo. App. 2002) ("Because we conclude that the registration and Internet posting provisions . . . do not constitute punishment, *Apprendi* is inapplicable."); *Young v. State*, 370 Md. 686, 716, 806 A.2d 233 (2002) ("We agree with those courts that have found that sex registration and notification statutes are not punishment in the constitutional sense. Accordingly, we hold that requiring petitioner to register as a sex offender . . . does not constitute punishment, but is a remedial requirement for the protection of the public."); *Commonwealth v. Kopicz*, 840 A.2d 342, 348 (Pa. Super. 2003)

("Because the [Pennsylvania] Supreme Court found that the registration, notification and counseling provisions were nonpunitive, Appellant is not subject to 'enhanced punishment' by virtue of his adjudication as a sexually violent predator.").

Our Supreme Court, however, has held the public access provisions of the KORA, found under K.S.A. 22-4909 and amendments thereto, are punishment for several purposes. In *State v. Myers*, 260 Kan. 669, 699, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997), the court held sex offender registration is punishment for ex post facto purposes: "We hold that the legislative aim in the disclosure provision was not to punish and that retribution was not an intended purpose. However, we reason that the repercussions, despite how they may be justified, are great enough under the facts of this case to be considered punishment." The Kansas act also allowed "unrestricted public access" which our Supreme Court held was "excessive and goes beyond that necessary to promote public safety." 260 Kan. at 699. Finally, the element of public access "makes more burdensome the punishment for a crime after its commission." 260 Kan. at 699. But see *Smith v. Doe*, 538 U.S. 84, 99, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003) (Alaska's practice of posting its sex offender registry on the Internet is not punishment for ex post facto purposes: "Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.").

In *State v. Scott*, 265 Kan. 1, 6, 961 P.2d 667 (1998), our Supreme Court considered whether the KORA's public access provisions were cruel and unusual punishment. The Supreme Court acknowledged the rapidly changing legislative landscape involving sexual offender registration laws:

"In order to comply with the requirements of 42 U.S.C. § 14071 (1994), most states amended their registration laws in 1997 and now provide for much greater public access than existed when we decided *State v. Myers* over 2 years ago. Many other states now allow broad public access to sex offender registration information similar to that permitted in Kansas. [Citations omitted.] Virtually every state now permits some public access, and all require sex offenders to register." 265 Kan. at 11.

While noting that *Myers* only involved ex post facto analysis, the court determined that it would "not attempt to alter the *Myers*

conclusion as to the punitive effect of the [KORA]." *Scott*, 265 Kan. at 6. Under the facts in *Scott*, our Supreme Court held "the punitive effect of the registration and notification provisions . . . are not so disproportionate . . . that such registration and public access is deemed inhumane, shocking, barbarous, or contrary to fundamental notions of human dignity so as to constitute cruel and unusual punishment." 265 Kan. at 15.

The KORA's punitive nature was considered again in *State v. Wilkinson*, 269 Kan. 603, 9 P.3d 1 (2000), where the defendant pled guilty to incest and was ordered to register as a sex offender. Similar to the present case, incest was not listed as a statutorily defined sexually violent crime, but it was "deemed a sexually violent crime . . . because it was found beyond a reasonable doubt to have been sexually motivated." 269 Kan. at 606. The defendant argued this procedure violated his due process rights because the KORA "does not afford him a hearing to determine the degree of threat he poses to the public prior to requiring him to register and/ or prior to permitting the public to have access to his registration information." 269 Kan. at 605-06.

After citing to *Myers* and *Scott*, our Supreme Court held:

"[T]he only procedural due process to which [the defendant] was entitled was the process required to convict him of the underlying offenses which triggered this noncruel, nonarbitrary aspect of his 'punishment' and the due process necessary to certify his offenses as sexually violent crimes within the terms of the [KORA]. [Citation omitted.]" 269 Kan. at 614.

Importantly, the *Wilkinson* decision was reached "[a]ssuming no constitutionally deficient procedure . . . in certifying [the conviction] as a sexually violent offense under the terms of the [KORA.]" 269 Kan. at 614. In fact, our Supreme Court specifically noted that Wilkinson did not assert any constitutional infirmity in the trial court's certification of incest as a sexually violent crime in that case. 269 Kan. at 614. In the present case, however, Chambers alleges a constitutionally deficient procedure.

In light of this case precedent we must decide whether, under *Apprendi*, our Supreme Court's holdings that set forth the punitive nature of the KORA mean a K.S.A. 22-4902(c)(14) determination of sexual motivation must be made by a jury if a defendant has not

admitted to sexual motivation or waived the right to a jury determination of that fact.

We begin by observing that *Myers*, *Scott*, and *Wilkinson* are not *Apprendi* cases. They address the punitive nature of the KORA in the context of ex post facto, cruel and unusual punishment, and procedural due process issues. These cases, however, do not address the "constitutional protections of surpassing importance," which include the Sixth Amendment's right to a speedy, public trial by an impartial jury and the Fourteenth Amendment's guarantee of due process of law which engaged the Supreme Court in *Apprendi*, 530 U.S. at 476-77.

For purposes of conducting an *Apprendi* analysis of the KORA, we view our Supreme Court's holdings in *Myers*, *Scott*, and *Wilkinson* as not dispositive of the critical issue: Does the KORA "impose a more severe sentence than the maximum sentence authorized by the facts found by the jury" as that phrase is used in *Apprendi* and its progeny? *Gould*, 271 Kan. 394, Syl. ¶¶ 2, 4; see *Blakely*, 542 U.S. at 298 (increase in term of imprisonment); *Apprendi*, 530 U.S. at 469 (same).

We first turn to *State v. Carr*, 274 Kan. 442, 444, 53 P.3d 843 (2002), wherein our Supreme Court considered whether a sentencing judge's decision to impose a prison sentence rather than a presumptive sentence of probation implicated *Apprendi*. Although sentencing a defendant to prison rather than granting probation qualifies as a more severe punishment, the court held *Apprendi* did not apply, because "*Apprendi* applies only to upward durational departures of a sentence imposed." 274 Kan. at 452. The Court reasoned an upward departure on disposition was not relevant under *Apprendi* because "[p]robation and parole are dispositions alternate to the serving of a sentence, and neither probation nor parole increase or decrease the sentence required to be imposed by statute." 274 Kan. at 451. Noting that while "the judge refused to grant Carr probation, Carr's prison sentence of 15 months was not increased," our Supreme Court concluded that "[t]he distinction between probation and the imposition of a prison sentence renders the United States Supreme Court's *Apprendi* decision inapplicable to a sentencing judge's decision to impose a dispositional

departure prison sentence rather than to grant probation." 274 Kan. at 452.

Similarly, in *State v. Garcia*, 274 Kan. 708, 711, 56 P.3d 797 (2002), our Supreme Court considered whether *Apprendi* applied to a prison sentence imposed pursuant to K.S.A. 2001 Supp. 21-4704a(k) upon the sentencing judge's finding that the "crimes were gang related," which led to imposition of "a presumptive prison term." Following the reasoning of *Carr* and its progeny, the court concluded, "[T]he prison terms imposed here do not exceed the statutory maximum punishment for [the defendant's] crimes, and *Apprendi* does not apply. [Citation omitted.]" 274 Kan. 711-12.

We also consider *State v. Beasley*, 274 Kan. 718, 722, 56 P.3d 803 (2002), wherein our Supreme Court considered the constitutionality of K.S.A. 2001 Supp. 21-4704a(h), which permitted the district court to impose a prison term rather than probation upon the requisite finding by a preponderance of the evidence that the defendant used a firearm in the commission of his crimes. Once again, in holding that "*Apprendi* does not apply," the court focused its analysis on whether the district court's finding which triggered a presumptive prison sentence "increased the penalty for his crimes beyond the statutory maximum." 274 Kan. at 722-23.

In *Carr*, *Garcia*, and *Beasley*, *Apprendi* was not applicable because the defendants' *sentences* were not increased beyond the statutory maximum terms. This is true even though the consequences of the district courts' factual findings clearly increased the defendants' *punishment*. If *Apprendi* does not apply to a sentencing judge's imposition of imprisonment rather than probation based upon on a nonjury factual finding that a defendant used a firearm in the commission of a crime or was a gang member, it is not evident how a sentencing judge's determination that a crime was sexually motivated, which results in a defendant's obligation to comply with the comparatively mild sanction of registration, implicates the Sixth and Fourteenth Amendments to the Constitution of the United States.

Moreover, while the KORA may have punitive aspects and its registration requirement may be ordered at time of sentencing, the KORA does not provide for the imposition or modification of sen-

tences. Kansas law relating to sentencing is codified in the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.* The KORA's statutory provisions are wholly separate and distinct from the KSGA.

We conclude that the punitive aspects inherent in the KORA do not implicate *Apprendi's* essential focus—prohibiting a sentencing judge from imposing "a more severe sentence than the maximum sentence authorized by the facts found by the jury." *Gould,* 271 Kan. 394, Syl. ¶¶ 2, 4. This determination results because our Supreme Court consistently has applied *Apprendi's* constitutional guarantees in cases involving increased sentences (*Gould* and *Anthony*), while declining to apply those same guarantees where the court found that the subject matter did not relate to a sentencing judge's imposition of a more severe sentence than the maximum sentence entitled by the jury's verdict (*Carr, Garcia,* and *Beasley*).

We uphold the constitutionality of the KORA. *Apprendi* does not apply to a sentencing judge's finding beyond a reasonable doubt that an offense was sexually motivated which results in imposition of the provisions of the KORA, K.S.A. 2005 Supp. 22-4901 *et seq.*

We hold the sentencing judge's finding of sexual motivation in the present case did not increase the terms of Chambers' underlying prison sentences beyond the maximum sentence provided for burglary. The sentencing judge's determination of sexual motivation did not, therefore, implicate *Apprendi's* guarantee of rights under the Sixth and Fourteenth Amendments to the Constitution of the United States.

### Burglaries and Thefts as Sexually Motivated Crimes

Chambers broadly asserts his crimes "cannot be found to be 'sexually motivated' within the meaning of [K.S.A. 2005 Supp. 22-4902(c)(14)]." To the extent this question requires an interpretation of the statute, our review is unlimited. See *Patterson,* 25 Kan. App. 2d at 247. With regard to the sentencing judge's finding of fact, our review is for substantial competent evidence. 25 Kan. App. 2d at 247.

Chambers maintains he was not sexually gratified during the burglaries and that his erotic use of the stolen property afterwards is not relevant under the statute. Chambers cites *State v. Halstien*, 122 Wash. 2d 109, 857 P.2d 270 (1993), in support of this proposition, but in *Patterson* this court specifically distinguished *Halstien* and held that under the Kansas statute, crimes committed for either "the defendant's immediate or eventual sexual gratification are considered 'sexually violent.'" 25 Kan. App. 2d at 251. Chambers' assertion is without merit.

The uncontroverted evidence at sentencing proved that Chambers, by his own admission, entered homes with the sole intent to steal women's lingerie in order to facilitate masturbation. Moreover, evidence was presented that Chambers had engaged in this behavior on prior occasions. Finally, the sentencing judge heard expert testimony that Chambers had been diagnosed with, among other disorders, a fetish disorder involving women's lingerie for which he received treatment. The sentencing judge did not misinterpret K.S.A. 2005 Supp. 22-4902(c)(14), and his finding was supported by substantial competent evidence.

### *Restitution*

Chambers raises three separate issues regarding restitution. Our standard of review is:

"Issues regarding the amount of restitution and the manner in which it is made to the aggrieved party are normally subject to review under an abuse of discretion standard. A district judge's factual finding of causation between the crime and the victim's loss is subject to a substantial competent evidence standard of review. The district court's interpretation of a statute is subject to unlimited review." *State v. Dexter*, 276 Kan. 909, Syl. ¶ 2, 80 P.3d 1125 (2003).

Chambers first argues the sentencing judge exceeded his authority by ordering $350 in restitution for the cost of a security system installed by one of Chambers' victims after the burglary.

Restitution in this case is governed by K.S.A. 2005 Supp. 21-4603d(b)(1), which authorizes an order of restitution for the "damage or loss caused by the defendant's crime," and by K.S.A. 2005 Supp. 21-4610(d)(1), which governs restitution as a condition of probation "for the damage or loss caused by the defendant's

crime." Based upon these statutes, the Kansas Supreme Court has concluded that "restitution for a victim's damages or loss depend[s] on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages." *State v. Hunziker*, 274 Kan. 655, Syl. ¶ 9, 56 P.3d 202 (2002).

The sentencing judge found the security system was "a direct causal effect" of the crime, but Chambers contends it was "indirect and consequential damage" of his crimes. The security system, while providing a safeguard against future criminal conduct, was not an item damaged or stolen by Chambers during the burglaries.

A useful precedent may be found in *Hunziker*, 274 Kan. at 657, wherein our Supreme Court reversed an order of restitution to the victim of a crime for the cost of a private attorney hired "to advise him since he was unfamiliar with court procedures and had never been to court." While the retention of an attorney to assist the victim was undoubtedly a consequence of the criminality, it was not directly caused by the criminality. 274 Kan. at 667.

No doubt the purchase of the security system was prompted by concern that Chambers, a neighbor of the victim, would reoffend, but this purchase was an example of " 'tangential costs incurred as a result of a crime,' " not a cost *caused* by the crime. 274 Kan. at 667 (quoting *State v. Beechum*, 251 Kan. 194, Syl. ¶ 3, 833 P.2d 988 [1992]). We hold the sentencing judge's order requiring Chambers to pay for the cost of the security system was not supported by substantial competent evidence. We reverse this part of the restitution order.

Second, Chambers contends the sentencing judge erred because he "used the replacement value of the items taken from the victims to determine the amount of restitution."

A sentencing judge has considerable discretion in determining the amount of restitution. *State v. Applegate*, 266 Kan. 1072, 1078, 976 P.2d 936 (1999). Although the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case, the sentencing judge's determination of restitution must be based on reliable evidence which yields a defensible restitution figure. A victim of a property crime is entitled to restitution only up to the amount of loss. 266 Kan. at 1079.

The usual standard used in calculating restitution is the item's "fair market value." *State v. Baxter*, 34 Kan. App. 2d 364, Syl. ¶ 2, 118 P.3d 1291 (2005). In *Baxter*, this court stated: "Kansas courts have consistently held that an award of restitution that exceeds fair market value constitutes an abuse of discretion." 34 Kan. App. 2d at 366.

In the present case, however, it is apparent there was no readily ascertainable market value for used lingerie. Given this fact, the sentencing judge did not abuse his discretion by employing a measure of restitution valuation in accordance with Kansas civil law in measuring damages to personal property which has no market value. In *Kansas Power & Light Co. v. Thatcher*, 14 Kan. App. 2d 613, Syl. ¶ 3, 797 P.2d 162, *rev. denied* 247 Kan. 704 (1990), a case involving the destruction of a 35-year-old wooden utility pole with no market value, we repeated the long-standing rule: "When measuring damages to personal property where the item damaged has no market value, other relevant factors must be considered such as the cost of repair, the original value, the loss of use, any special value to the owner, the loss of expected profits, and *the cost of replacement*." (Emphasis added.)

Because the used lingerie had no readily ascertainable market value, the sentencing judge's consideration of replacement value evidence was not an abuse of discretion in the valuation of restitution.

Finally, Chambers claims a due process violation because the sentencing judge ordered restitution to a victim who was "not present or represented at the restitution hearing." During sentencing, the sentencing judge listed the restitution figures, which included a letter from one victim claiming a loss of $500. Defense counsel made no objection to the sentencing judge's consideration of this letter other than the objection he made generally to all evidence of replacement costs for the lingerie.

On appeal, however, Chambers argues that consideration of this letter, without the presence of the victim, violated his due process rights. He admits the letter supported the $500 restitution amount ordered by the sentencing judge, but he argues it was inadmissible hearsay.

As discussed earlier, "[t]he rigorous standards for proof of damages in a civil action do not apply in calculating an amount of restitution in a criminal case." *Baxter*, 34 Kan. App. 2d at 365. Moreover, in this case, Chambers neither specifically objected to the sentencing judge's consideration of the letter nor asked that the victim be made available for confrontation. Constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review, unless they fall into one of three exceptions. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). None are present here.

The district court's ruling ordering Chambers to register as a sex offender pursuant to the KORA is affirmed. The district court's order of $350 in restitution for the installation of a security system is reversed. The district court's restitution order in all other respects is affirmed.

Affirmed in part and reversed in part.