NOT DESIGNATED FOR PUBLICATION

No. 114,808

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSICA L. BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed December 23, 2016. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*: Jessica L. Brown pled guilty to arson and three counts of criminal damage to property. A jury convicted her on an additional charge of aggravated assault with a deadly weapon. The district court granted 24 months' probation and ordered Brown to register as a violent offender under the Kansas Offender Registration Act (KORA). Brown appeals, arguing (1) there was insufficient evidence to support her conviction for aggravated assault; (2) the district court failed to make a finding she used a deadly weapon prior to ordering offender registration; (3) the court erred in ordering registration under the erroneous belief it was required to do so; and (4) the statute under

1

which she was found to be an offender, K.S.A. 2015 Supp. 22-4902(e)(2), is unconstitutional. We affirm.

On the night of February 23, 2014, Brown and her husband, Aaron Brown, went to a bar near their house, Hoots, in Wichita. They stayed at Hoots until last call.

Aaron went out to start his van. When he went back to get Brown, he found her on the ground by the doorway, yelling that someone had hit her. She was not sure who had done it, but she knew it was a man in a white shirt. The manager of Hoots, Michael Herman, came to help Brown up, but she was so angry she hit him repeatedly with one of her boots. She ended up leaving her boot at the bar.

After returning home, Brown told Aaron she wanted her boot back. Aaron returned to the bar around 2:45 a.m. to retrieve Brown's boot. Another disturbance occurred, involving Aaron and two bouncers at Hoots, Adam Alonzo and Nicholas Phillips. Aaron left without the boot. To calm down, Aaron decided to go for a drive. While driving, he got a phone call from Brown. He told her he had gotten beaten up and he might need to go to the hospital. Goddard Police subsequently stopped Aaron for driving under the influence later that night.

After talking to Aaron, Brown was still upset. She put on a hooded jacket with the hood up and walked back to Hoots with a knife, a can of Axe body spray, and a lighter. She used the flammable body spray and the lighter to set a fence on fire. She then attempted to set the manager's Lexus on fire. After failing to set the Lexus on fire, she began scratching it with the knife. She then used the knife to scratch up other cars in the Hoots' parking lot.

Around 3 a.m., Alonzo was taking care of his closing duties when he heard a crackling that sounded like campfire. He opened the back door and saw the fence was on

2

fire. He ran the perimeter of the building to see if whoever had set the fire was still there. Not finding anyone, Alonzo returned to put out the fire with the help of Herman and Phillips.

A little while later, Alonzo went back outside and "[got] a weird feeling that somebody was there, something was going on." Alonzo walked past the burned fence towards the parking lot and saw someone in a jacket with the hood up. The hooded person, who turned out to be Brown, was walking towards Herman's car carrying something Alonzo at first believed was a "slimjim," a tool used to break into cars. He ran toward Brown and asked, "[W]hat are you doing?"

Brown turned around and began approaching Alonzo very quickly. At this point, Brown was approximately 4 to 5 feet from Alonzo. He realized she was carrying an 8-inch kitchen knife with the blade pointed directly at him. As she approached, she asked, "[A]re you the person that hit me?"

Alonzo immediately backed up, fearing he might be stabbed. Brown then stopped to light a cigarette. As she did so, Alonzo grabbed for her hand holding the knife and "hip tossed" her to the ground. Once Alonzo had Brown on the ground, he got the knife away from her. He held her there and yelled for help for several minutes. Herman eventually came outside, found Alonzo on the ground with Brown, and called the police.

When Officer Chris Ronen arrived on the scene, he saw Alonzo holding Brown on the ground. Alonzo told Officer Ronen that Brown had tried to stab him, and he pointed to the knife lying on the ground. Officer Ronen handcuffed Brown and detained her in a patrol car. Officers recovered the knife as well as a lighter and a can of Axe body spray.

Officer Jeremy Gray read Brown her *Miranda* rights and interviewed her in the patrol car. According to Officer Gray, Brown confessed to lighting the fence on fire and

3

scratching cars in the Hoots' parking lot. She also admitted she had walked toward a bouncer with a knife in her hand, asking if he was the one who hit her.

As part of their investigation, police obtained Hoots' security camera footage. The video footage showed Brown vandalizing cars in the parking lot with a knife. It did not record the incident between Alonzo and Brown in the parking lot.

The State charged Brown with arson, aggravated assault with a deadly weapon, and multiple counts of criminal damage to property. Brown pled guilty to an amended complaint of one count of arson and three counts of criminal damage to property. The case proceeded to trial on the remaining charge of aggravated assault with a deadly weapon.

At trial, Brown testified she began walking home after she vandalized the cars in the Hoots' parking lot. As she left, however, people started coming out of the bar, so she hid in a nearby parking lot. After 5 or 10 minutes, Alonzo spotted Brown and started running towards her. She realized she had been caught, so she threw her knife down to show she was done.

The jury convicted Brown of aggravated assault with a deadly weapon. On April 1, 2015, the district court held a hearing to notify Brown that she was required to register under KORA. At a June 30, 2015, sentencing hearing, the court again informed Brown she was required to register under KORA. The court then sentenced Brown to 24 months' probation with an underlying sentence of 12 months' imprisonment. Brown appeals.

Brown argues that looking at the evidence in a light most favorable to the State, she did not place Alonzo in apprehension of *immediate* bodily harm. She asks us to adopt a definition of immediate for the aggravated assault statute and find the evidence does not meet this definition. The State argues that we need not

4

define the word immediate in the aggravated assault statute because under any ordinary understanding of the word the evidence was sufficient to support Brown's conviction.

When a defendant challenges the sufficiency of evidence in a criminal case, this court reviews all the evidence in a light most favorable to the State. We will uphold the conviction if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, we generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). We will reverse a guilty verdict only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983); *State v. Naramore*, 25 Kan. App. 2d 302, 322, 965 P.2d 211 (1998).

A jury convicted Brown of aggravated assault with a deadly weapon. 2015 Supp. K.S.A. 21-5412(b)(1) defines this offense as: "knowingly placing another person in reasonable apprehension of immediate bodily harm committed . . . [w]ith a deadly weapon." At trial, there was conflicting evidence about what happened during the altercation between Alonzo and Brown. Because we view the evidence in a light most favorable to the State, we will take Alonzo's testimony at face value.

Alonzo testified Brown began approaching him very quickly. When she was about 4 or 5 feet away, he realized she was holding a knife with an 8-inch blade. He immediately backed up, but she continued to advance, pointing the knife directly at him and asking if he was the one who had hit her. When asked what he was thinking at the time, Alonzo responded:

"I don't want to get cut. . . . I don't want to be stabbed with a knife, cut by any means, Fear, for one. I didn't know the capability of that person or what they were going to do. Obviously they were there to do bad intentions with a knife. Covered up."

Only when Brown stopped approaching did he stop backing up. He then waited until she was trying to light a cigarette to subdue her.

The record clearly demonstrates Alonzo was in reasonable apprehension of immediate bodily harm. Brown was within 4 to 5 feet of him with a large knife and advancing quickly. He testified he took immediate defensive action and was afraid he was going to be stabbed. Based on this evidence, a rational factfinder could have found Brown guilty beyond a reasonable doubt.

In her brief, Brown asks us to define the word "immediate" in K.S.A. 2015 Supp. 21-5412 and find there was insufficient evidence Alonzo was in reasonable apprehension of *immediate* bodily harm. In support of her argument, she cites to *State v. Hundley*, 236 Kan. 461, 693 P.2d 475 (1985). In *Hundley*, a battered wife moved into a hotel to escape her abusive husband. One night, her husband broke into her hotel room, choked her, and threatened to kill her. During a break in the violence, her husband pounded a beer bottle on the night stand and threw a dollar bill toward the window, demanding that she go buy cigarettes. The wife felt threatened by the beer bottle, because her husband had used beer bottles to hit her many times before. She pulled a gun from her purse and shot him.

The State charged the wife with murder, but she invoked self-defense. The jury convicted her of involuntary manslaughter. On appeal, she argued the district court had incorrectly instructed the jury on self-defense. By statute, someone is justified in the use of force when he or she reasonably believes it is necessary to defend himself or herself against the *imminent* use of unlawful force. The district court, however, instructed the

6

jury that someone is justified in the use of force when he or she reasonably believes it is necessary to defend himself or herself against the *immediate* use of unlawful force.

The *Hundley* court found the giving of the jury instruction was reversible error. 236 Kan. at 469. In reaching this conclusion, the court distinguished between the meaning of the words "imminent" and "immediate." According to the court, imminent meant: "Ready to take place . . . or impending." 236 Kan. at 466 (quoting Webster's Third New International Dictionary 1130 [1961]). On the other hand, immediate meant: "Occurring, acting or accomplished without loss of time." 236 Kan. at 466 (quoting Webster's Third New International Dictionary 1129 [1961]). Because the jury could have found the wife was facing an imminent but not immediate threat, the instruction was erroneous. 236 Kan. at 467-69.

Brown asks us to adopt *Hundley*'s definition of immediate. Alternatively, Brown suggests the definition of immediate from Black's Law Dictionary: "[E]ither instantly or without considerable loss of time." Black's Law Dictionary 749 (6th ed. 1990). Even if we were to adopt either of these definitions, though, it would not help Brown's case. Based on Alonzo's testimony, Brown was brandishing a weapon within a short distance and could have cut or stabbed him within seconds. This almost certainly qualifies as bodily harm "[o]ccurring . . . or accomplished without loss of time" or "without considerable loss of time."

Furthermore, *Hundley* is not as helpful to Brown's case as she might wish. In distinguishing between imminent and immediate threats, the *Hundley* court used the following analogy:

"An aggressor who is customarily armed and gets involved in a fight may present an imminent danger, justifying the use of force in self-defense, even though the aggressor is unarmed on the occasion. There may be no immediate danger, since the aggressor is in

7

fact unarmed, but there is a reasonable apprehension of danger. In other words, the law of self-defense recognizes one may reasonably fear danger but be mistaken." 236 Kan. at 468.

The *Hundley* court also noted: "[Her husband's] threat was no less life-threatening with him sitting in the motel room tauntingly playing with his beer bottle than if he were advancing toward her." 236 Kan. at 467. This suggests that an armed aggressor advancing with a weapon, such as Brown in the present case, does in fact present an immediate threat. Based on the record at trial viewed in a light most favorable to the State, there was sufficient evidence to support Brown's conviction for aggravated assault with a deadly weapon.

On April 1, 2015, the district court held a notice of duty to register hearing. At that hearing, the judge stated:

> "[W]hen the jury did return a verdict that found you guilty of aggravated assault with a deadly weapon, registration under the Kansas Offender Registration Act was required under law, but we just overlooked to do that. We're doing that today.
>
> "I do find that conviction of Count No. 5, aggravated assault, which is a person felony, and which was done with a deadly weapon, specifically a knife, is an offense that requires you to register under the Kansas Offender Registration Act as a violent offender."

Later, at the sentencing hearing, the judge commented: "Registration is required. And it's already been ordered as of, I believe April 1st, 2015, and that's been done. The registration is a requirement because of this offense. The aggravated assault."

Brown argues that these comments by the district court indicate that not only did the court fail to comply with K.S.A. 2015 Supp. 22-4902(e)(2) by not making a deadly weapon finding, it also abused its discretion by ordering her to register under the

erroneous belief that she was required to do so due to her jury conviction for aggravated assault. The State argues that the district court did make an adequate factual finding, and, if not, the jury conviction served as a deadly weapon finding which required Brown to register under KORA.

Brown did not raise this issue before the district court, however, the parties are not in dispute regarding what the court did. The challenge is whether the court's actions complied with the controlling statutes. As such, Brown presents only a question of law which we may address for the first time on appeal. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014); *State v. Washington*, No. 108,580, 2014 WL 278724, at *2 (Kan. App. 2014) (unpublished opinion) (reviewing similar issue under same exception). As this issue presents a question of law, we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Brown also argues her sentence is illegal and that we may review claims of an illegal sentence for the first time on appeal. In prior cases, this court has reviewed similar issues under the claim of an illegal sentence. See, *e.g.*, *State v. Thomas*, No. 109,951, 2014 WL 3020029, at *11 (Kan. App. 2014) (unpublished opinion). However, the court in *State v. Simmons*, 50 Kan. App. 2d 448, 463, 329 P.3d 523 (2014), *rev. granted* June 21, 2016, held that a registration order was not a part of a defendant's sentence, so this argument is no longer valid.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan,* 303 Kan. 1017, 1019, 370 P.3d 417 (2016). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear

9

or ambiguous do we use canons of construction or legislative history to construe the legislature's intent. 303 Kan. at 813.

K.S.A. 2015 Supp. 22-4902(a) defines the meaning of the word "offender" for the purposes of KORA and includes "violent offender." K.S.A. 2015 Supp. 22-4902(a)(2). Violent offender includes anyone convicted of certain crimes listed in K.S.A. 2015 Supp. 22-4902(e)(1). Violent offender also includes any person who "on or after July 1, 2006, is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." K.S.A. 2015 Supp. 22-4902(e)(2). Aggravated assault is not one of the crimes listed in subsection (e)(1). Based on the plain language of the statute, for a defendant convicted of aggravated assault to be a violent offender, that defendant must qualify under subsection (e)(2) and the court must make a finding he or she used a deadly weapon in the commission of the crime.

In *State v. DeJesus*, No. 101,670, 2010 WL 2044928 (Kan. App. 2010) (unpublished opinion), the defendant argued on appeal that the district court erred in requiring him to register as an offender under KORA because it failed to make specific findings on the record concerning the use of a deadly weapon. The *DeJesus* court found the district court had complied with the requirements of K.S.A. 22-4902(a)(7). 2010 WL 2044928, at *5. In reaching this conclusion, the *DeJesus* court noted the district court stated DeJesus was convicted of "'one count of aggravated assault with a deadly weapon.'" 2010 WL 2044928, at *5. It added the district court indicated in the journal entry that DeJesus committed "'the current crime with a deadly weapon.'" 2010 WL 2044928, at *5. The *DeJesus* court found these constituted specific findings that DeJesus used a deadly weapon. 2010 WL 2044928, at *5.

In *State v. Skinner*, No. 108,140, 2013 WL 4404181 (Kan. App. 2013) (unpublished opinion), the defendant raised the same argument on appeal as the defendant in *DeJesus*. The *Skinner* court noted that the district court had made multiple

10

references to the defendant's use of a knife during the commission of his crime at the sentencing hearing. The journal entry also noted that the defendant would have to register as an offender because his crime was committed with a deadly weapon. Relying on *DeJesus*, the *Skinner* court found that, while the district court could have been clearer, the record showed it complied with the requirements of KORA. 2013 WL 4404181, at *8-9. See also *State v. Gilkes*, No. 109,259, 2014 WL 642091, at *4 (Kan. App. 2014) (unpublished opinion) (jury conviction, statements at sentencing hearing, and journal entry, when read together, establish factual finding which complied with K.S.A. 22-2013 Supp. 4907[e][2]), *rev. granted* June 21, 2016.

Based on the above cases, the district court here made the necessary fact findings to comply with K.S.A. 2015 Supp. 22-4907(e)(2). At the notice of duty to register hearing, the judge explicitly said, "I do find that conviction of . . . aggravated assault . . . which was done with a deadly weapon, specifically a knife . . . requires you to register." This alone is enough to comply with the statute. If not, the court also noted at sentencing that Brown "[brought] a deadly weapon such as a knife, especially the knife that she brought in this case" to the scene of the aggravated assault. Additionally, the journal entry indicated Brown was required to register because she had committed a crime with a deadly weapon.

Brown cites to a number of cases in which this court vacated registration orders because the district court failed to make a finding that the defendant committed the crime of conviction using a deadly weapon. Most of these cases are distinguishable from the present case. In *State v. Carlson*, No. 107,557, 2013 WL 1943063 (Kan. App. 2013) (unpublished opinion), and *State v. Washington*, No. 108,580, 2014 WL 278724 (Kan. App. 2014) (unpublished opinion), the district court attempted, after sentencing, to enter a registration order or make a factual finding that the defendant used a deadly weapon. In *State v. Thomas*, No. 109,951, 2014 WL 3020029 (Kan. App. 2014) (unpublished opinion), the district court ordered the defendant to register without ever making any

11

finding that the defendant used a deadly weapon. Finally, in *State v. Thomas*, No. 112,282, 2015 WL 4578601 (Kan. App. 2015) (unpublished opinion), the district court found that the weapon at issue was deadly, but not that the defendant had used it in the commission of the crime.

In all of these cases, the district court simply failed to make an adequate fact finding prior to the completion of sentencing. In contrast, the district court in Brown's case made a fact finding that Brown used a deadly weapon in the commission of the crime at the notice of duty to register hearing. It made a second finding at the sentencing hearing and then included this information on the journal entry. Thus, none of Brown's cited cases are controlling. Because the district court made a deadly weapon finding, Brown's registration order is not invalid for this reason.

Brown further argues the district court erred in ordering registration because the court did so based on the erroneous belief it was required to do so when, in fact, ordering registration was within the court's discretion. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). When reviewing whether a district court's discretionary determination was guided by an erroneous legal conclusion, this court exercises unlimited review. *State v. Garcia*, 295 Kan. 53, 61, 283 P.3d 165 (2012).

Based on the plain language of the statute, this court has previously held that registration under K.S.A. 2015 Supp. 22-4905(e)(2) is not mandatory until after the court has made the requisite finding that the defendant used a deadly weapon in the commission of the crime. See *Gilkes*, 2014 WL 642091, at *5; *Carlson*, 2013 WL 1943063, at *3. Additionally, K.S.A. 2015 Supp. 22-4902(e)(2) does not require the court to make such a finding. See *Gilkes*, 2014 WL 642091, at *5; *Carlson*, 2013 WL 1943063 at *3. But see *State v. Marinelli*, No. 111,227, 2015 WL 1882134, at *2-3 (Kan. App.

12

2015) (unpublished opinion) (applying holding in *Simmons* that duty to register imposed automatically by law without court intervention to find registration required even though district court failed to inform defendant of duty to register and failed to make factual finding under K.S.A. 2012 Supp. 22-4902[e][2]), *rev. granted* October 28, 2016.

In *Gilkes*, the defendant brought the same challenge as Brown does now. The district court in that case stated at sentencing: "[T]his offense, once you get up to the Secretary of Corrections, does require what's called registration." 2014 WL 642091, at *5. The *Gilkes* court found that K.S.A. 2013 Supp. 22-4902(e)(2) did not require the district court to find the defendant used a deadly weapon in the commission of the crime "even if the State presents evidence tending to demonstrate that fact." 2014 WL 642091, at *5. Once the district court made that finding, however, registration was mandatory. Because the district court had already made the requisite finding prior to the statement at issue, registration was in fact required at that point. 2014 WL 642091, at *5.

In Brown's case, the district court made its comment at the sentencing hearing after it found she had committed aggravated assault with a deadly weapon. At that point, K.S.A. 2015 Supp. 22-4902(e)(2) did require her to register, so the comment does not indicate an erroneous legal standard. The first statement, made at the notice of duty to register, was made immediately before the factual finding. *Gilkes* does not provide guidance as to this comment.

The State argues that the jury's conviction of aggravated assault with a deadly weapon was sufficient to require registration under KORA, since that conviction carried with it a finding that Brown used a deadly weapon in the commission of her crime. This court has expressly rejected this argument, noting the plain language of K.S.A. 2015 Supp. 22-4902(e)(2) requires the *district court* to make a deadly weapon finding on the record before requiring registration. See *Thomas*, 2014 WL 3020029, at *11-12. A conviction for a crime in which use of a deadly weapon is an element will not suffice.

13

2014 WL 3020029, at *11-12. The district court found that Brown had been convicted of a crime involving a deadly weapon and had used a deadly weapon. These findings are sufficient.

Brown also argues K.S.A. 2015 Supp. 22-4902(e)(2) is unconstitutional because it allows a district court to order KORA registration based upon a judicial finding of fact. Brown contends this is a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 424 (2000). Brown argues this court has already found this statute is constitutional, but these opinions fail to consider the burden KORA registration places on offenders. The State argues no further fact finding beyond the jury's conviction was needed to impose Brown's registration requirement, so there can be no *Apprendi* violation. Furthermore, it asserts both Kansas Court of Appeals and Kansas Supreme Court precedent establish that Brown's claim fails.

Brown did not raise this issue below. We may review *Apprendi* issues for the first time on appeal to prevent the denial of fundamental rights. *Phillips*, 299 Kan. at 493; *State v. Unrein*, 47 Kan. App. 2d 366, 369, 274 P.3d 691 (2012). Because the issue Brown presents is a question of law, we have unlimited review. *Collins*, 303 Kan. at 473-74.

As discussed in the previous issue, K.S.A. 2015 Supp. 22-4902(e)(2) requires the district court to make an additional deadly weapon finding before ordering registration for defendants whose crimes of conviction are not listed in subsection (e)(1). A jury conviction alone does not make registration mandatory. Thus, the State's argument that only a jury conviction is needed to require registration under K.S.A. 2015 Supp. 22-4902(e)(2) fails.

14

As Brown concedes in her brief, this court has repeatedly rejected the argument she now raises on appeal. In *State v. Chambers*, 36 Kan. App. 2d 228, 138 P.3d 405 (2006), the defendant, who had pled guilty to a string of burglaries the district court determined were sexually motivated, argued that KORA's registration requirement violated *Apprendi* because it imposed a sentence more severe than that authorized by the facts. The *Chambers* court found that while KORA may have some punitive aspects, it did not implicate *Apprendi* because it did not allow a sentencing judge to impose a sentence more severe than the legal maximum. 36 Kan. App. 2d at 239.

More pertinent to Brown's case is *Unrein*, 47 Kan. App. 2d. 366. In *Unrein*, the defendant entered a guilty plea pursuant to *Alford* to two counts of attempted aggravated assault, and the district court ordered him to register as an offender under KORA based on its finding that he used a deadly weapon. On appeal, the defendant challenged the district court's ruling as a violation of *Apprendi*. The *Unrein* court found that the district court's factual finding did not violate *Apprendi* because neither registration under KORA nor any corresponding duty or liability imposed constituted punishment. 47 Kan. App. 2d at 369-72.

Brown respectfully submits these prior cases were wrongfully decided because "they vastly underestimate the burden of KORA registration." She argues that offenders must report in person at a sheriff's office at least four times a year and possibly more if they need to update personal information. Offenders must pay a $20 fee when they register at a sheriff's office, and these fees can add up to hundreds if not thousands of dollars over the course of the registration period. An offender's personal information will be posted on a public website. Offenders also face a felony charge if they violate any of the KORA provisions.

*Unrein*, however, directly addressed the issues of registration, fees, publication of personal information, and penalties for violations of KORA. The *Unrein* court found

15

these measures were not punitive in nature but necessary for the efficacy and functioning of the scheme. 47 Kan. App. 2d at 371-72. Brown does not provide any substantially different arguments regarding these duties and liabilities.

As Brown notes in her reply brief, the Kansas Supreme Court issued five opinions on April 22, 2016, that are of relevance to her case. In *Doe v. Thompson*, 304 Kan. 291, 373 P.3d 750 (2016); *State v. Redmond*, 304 Kan. 283, 371 P.3d 900 (2016); and *State v. Buser*, 304 Kan. 181, 371 P.3d 886 (2016), the court held that KORA registration for sex offenders was punishment for the purposes of the Ex Post Facto Clause. *Thompson*, 304 Kan. at 328; *Redmond*, 304 Kan. at 289; *Buser*, 304 Kan. at 189. On the same day, the court also issued *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016). In *Petersen-Beard*, the court held lifetime postrelease sex offender registration was not punishment "for the purposes of applying the provisions of the United States Constitution." 304 Kan. 192, Syl. ¶ 1. In so holding, the court explicitly overruled *Thompson*, *Redmond,* and *Buser*. *Petersen-Beard*, 304 Kan. at 197.

The *Petersen-Beard* court specifically addressed sex offender registration under KORA. In its opinion, however, the court addressed KORA's requirements regarding posting offender information on the Internet, quarterly registration, and mandatory fees. 304 Kan. at 199-206. These are the same duties Brown raises as proof of KORA's punitive effect. The *Petersen-Beard* court found these requirements were not punishment. 304 Kan. at 209.

That same day, the court in *State v. Charles*, 304 Kan. 158, 372 P.3d 1109 (2016), held that KORA registration for violent offenders was punishment for purposes of *Apprendi* challenges. *Charles*, 304 Kan. at 179. The court also found that under *Apprendi* a jury must make the factual finding that the defendant used a deadly weapon in order to impose the registration requirement. *Charles*, 304 Kan. at 179. In reaching its conclusion, the *Charles* court relied on the reasoning and holding in *Thompson*, which

16

was overruled that same day. *Charles*, 304 Kan. at 178. The *Charles* court acknowledged that *Petersen-Beard* "may influence whether the KORA holding of [*Charles*] is available to be relied upon by violent offenders whose appeals have yet to be decided." 304 Kan. at 179.

Brown argues we should apply *Charles* in her case because it was not explicitly overruled by *Petersen-Beard*. We are duty bound to follow Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015), *rev. denied* 303 Kan. 1078 (2016). Brown is correct that *Charles* is still good law. On the other hand, *Petersen-Beard* explicitly overruled the case on which *Charles* is based. Furthermore, the *Charles* court acknowledged *Petersen-Beard* called into doubt the continued applicability of its holding. This is surely some indication the Supreme Court may be departing from its position in *Charles*.

The holding in *Charles* makes the resolution of this issue more complicated than in previous cases. Nonetheless, the weight of authority still seems to favor finding K.S.A. 2015 Supp. 22-4902(e)(2) constitutional, particularly given the tentative nature of the holding in *Charles*. See *Petersen-Beard*, 304 Kan. 192; *Unrein*, 47 Kan. App. 2d 366; *Chambers*, 36 Kan. App. 2d 228.

Viewed in a light most favorable to the State, sufficient evidence supported Brown's conviction. The district court made the necessary deadly weapon finding under K.S.A. 2015 Supp. 22-4902(e)(2), and K.S.A. 2015 Supp. 22-4902(e)(2) is not unconstitutional. Therefore, Brown is not entitled to relief on those grounds.

Affirmed.

17