IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,413

STATE OF KANSAS,
*Appellee*,

v.

KORREY RAINE WHITE RINKE,
*Appellant*.

SYLLABUS BY THE COURT

Under the facts of this case, the State did not present substantial competent evidence that the defendant committed the crimes of felony murder and aggravated kidnapping for the purpose of the defendant's sexual gratification. It thus did not show the crimes were sexually motivated or that the defendant committed a sexually violent crime that required him to register under the Kansas Offender Registration Act, K.S.A. 2020 Supp. 22-4901 et seq.

Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Opinion filed July 30, 2021. Reversed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, was on the brief for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

PER CURIAM:  Korrey Raine White Rinke challenges the district court's finding that his crimes of felony murder and aggravated kidnapping were sexually motivated as

1

defined by the Kansas Offender Registration Act (KORA), K.S.A. 2020 Supp. 22-4901 et seq. See K.S.A. 2020 Supp. 22-4902(c)(18). He points out that he committed the crimes after having sex with the victim, and he argues no evidence shows he committed the crimes for the purpose of sexual gratification. The State responds that the felony murder and aggravated kidnapping were inextricably intertwined with the sexual encounter and were thus committed for sexual gratification.

We hold the district court's finding that Rinke committed the crimes of felony murder and aggravated kidnapping for the purpose of sexual gratification is not supported by substantial competent evidence. We thus reverse the district court's finding that Rinke committed a sex offense for which he had a registration obligation under KORA.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Rinke with the capital murder of J.P. and her rape. Rinke ended up pleading guilty to amended charges of felony murder and aggravated kidnapping in exchange for the State agreeing not to seek the death penalty. The amended complaint charged kidnapping as the inherently dangerous felony underlying the felony murder. At the plea hearing Rinke admitted he "confined [J.P.] for the purpose of inflicting bodily harm or terrorizing her and he in fact did inflict bodily harm on her which resulted in her death." Beyond this stipulation, the plea hearing record includes few facts.

The prosecutor did however remind the judge he had heard evidence during a two-and-a-half day *Jackson v. Denno* hearing and at the preliminary hearing. The prosecutor then related that Rinke and J.P. were together at a "park consensually, but at some point the defendant restrained or kept [J.P.] from leaving the place where she was against her will. In the process of that restraint, he caused her injuries which resulted in her death."

2

Although Rinke stipulated to the factual basis necessary to prove felony murder and aggravated kidnapping, the plea agreement made clear the parties had not reached an agreement about whether the felony murder and aggravated kidnapping were sexually motivated. At the plea hearing, Rinke's attorney argued the crimes were not sexually motivated because "the acts that resulted in [J.P.'s] death occurred after any sexual activity occurred." The State asked the court to find that, "based on all of the evidence including the defendant's statements that were presented, that it is beyond a reasonable doubt that this was a sexually motivated crime." Without elaboration, the district court made a finding beyond a reasonable doubt that the crime was sexually motivated.

Later, at a sentencing hearing, the judge followed the plea agreement and sentenced Rinke to life without possibility of parole for 25 years for the felony murder and the mid-box sentence of 176 months for the aggravated kidnapping, to run concurrent with the murder sentence. The judge reiterated his prior finding that the crimes were sexually motivated, and he accepted the notice of duty to register Rinke had signed. The journal entry reflected the finding and Rinke's obligation to register.

With no factual detail being presented at the plea hearing, much of what is known about the events comes from Rinke's statements to police that were the subject of the *Jackson v. Denno* hearing. See *Jackson v. Denno*, 378 U.S. 368, 376-77, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (requiring a hearing on the voluntariness of a confession before its admission into evidence). Rinke told police officers that he got to know J.P. because they were in the same research study. On the day of J.P.'s death, they ran into each other at the facility where the study was being conducted. They left together in Rinke's truck. After buying liquor, they parked near a hiking trail in a public park to drink. Eventually

3

they walked down the trail to relieve themselves in the woods; the two served as lookouts for each other. They then engaged in sexual activity.

At the plea hearing, Rinke's counsel asserted the sex was consensual, but Rinke's statements to police were inconsistent. Rinke first told police the two had consensual sex. But later in the interview a police officer asked Rinke if he had sex with J.P. even though she did not want to. Rinke nodded his head in affirmation. The officer then asked, "So, she doesn't want to have sex because you don't have a condom, but yet you go ahead and have sex with her anyway—and that's when she's pleading with you to stop." Rinke responded, "She told me to stop before." The officer replied, "But you proceeded to have sex anyway, even though she told you to stop." Rinke said, "Yep, it's considered rape."

Rinke at first told the police that J.P. was upset because she wanted Rinke to use a condom, but he did not have one. After the sex, Rinke became overcome with guilt and told J.P. that she would have to kill him. When she would not, Rinke beat her with his fists. Throughout the several hours of interview, Rinke recited variations of the events in which he insisted he did not beat J.P. until after they had sex. At one point, an officer asked Rinke if he began punching J.P. when she complained about having sex without a condom. Rinke nodded. The officer then asked, "Is this because you're having sex with her, and she doesn't want you to?" Rinke again nodded. And at another point, he said the victim liked the sex and wanted him to stop only once he started hitting her.

The State relies on these statements by Rinke as evidence that the crimes of felony murder and aggravated kidnapping were sexually motivated.

4

KORA requires certain offenders to register with a law enforcement agency in any place where the offender resides, maintains employment, or attends school. See K.S.A. 2020 Supp. 22-4904; K.S.A. 2020 Supp. 22-4905. Sex offenders are among those who must register. K.S.A. 2020 Supp. 22-4902(a)(1). And the term "sex offenders" includes those who commit a sexually violent crime. K.S.A. 2020 Supp. 22-4902(b)(1).

K.S.A. 2020 Supp. 22-4902(c) includes a list of sexually violent crimes. The list does not include either felony murder or aggravated kidnapping. But the statute also has a catch-all provision covering "any act which has been determined beyond a reasonable doubt to have been sexually motivated . . . . As used in this paragraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2020 Supp. 22-4902(c)(18). Courts have applied this catch-all provision to various crimes not listed in subsection (c). See *State v. Coman*, 294 Kan. 84, 95-96, 273 P.3d 701 (2012) (collecting cases).

In this appeal, the parties disagree about whether the record includes substantial competent evidence showing that Rinke committed the crimes of felony murder and aggravated kidnapping for the purpose of his sexual gratification. Rinke argues because he committed these acts after he had sex with J.P. no evidence shows he committed the crimes of conviction for the purpose of his sexual gratification. The State disagrees. It argues "the sexual act and murder occurred in lockstep. [Rinke's] purported motive for killing [J.P.] was the shame of having sexual intercourse without a condom. . . . [T]he sexual act was inextricably intertwined with the murder." The State contends Rinke's "rape of the victim fell with[in] K.S.A. 22-4902(c)(18)." The State also argues Rinke

5

"would not have committed the aggravated kidnapping and murder but for his rape of the victim."

The district court accepted the State's view and found beyond a reasonable doubt that the felony murder and aggravated kidnapping were sexually motivated. This was a finding of fact.

Appellate courts review findings of fact for substantial competent evidence. *State v. Queen*, 313 Kan. 12, 482 P.3d 1117 (2021). The phrase "substantial competent evidence" is defined as legal and relevant evidence that a reasonable person might regard as sufficient to support a conclusion. 313 Kan. at 20. The appellate court does not reweigh conflicting evidence, evaluate witness credibility, or redetermine questions of fact and will presume that the district court found all facts necessary to support the judgment. 313 Kan. at 20. Here, review of the finding of fact about whether Rinke's crimes were sexually motivated also involves interpretation of the statutory meaning of the terms sexually motivated and sexual gratification. Appellate courts interpret statutes de novo, granting no deference to the district court. 313 Kan. at 17 (citing *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 [2020]).

In deciding if substantial competent evidence supports the district court's finding, it helps to first consider the meaning of sexual gratification. K.S.A. 2020 Supp. 22-4902(c)(18) does not include a definition. But Kansas courts interpreting statutes often look to dictionaries to explain the ordinary meaning of common words. See *State v. Valdiviezo-Martinez*, 313 Kan. 614, 626, 486 P.3d 1256 (2021). Merriam-Webster defines "gratification" as a "reward," as "the state of being gratified," or "as a source of satisfaction or pleasure." Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/gratification.

Rinke concedes he engaged in sexual acts with J.P. But he argues the felony murder and aggravated kidnapping were not sexually motivated because he had achieved sexual gratification before he committed the crimes. For support Rinke cites *State v. Chambers,* 36 Kan. App. 2d 228, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006).

In *Chambers*, the defendant pleaded guilty to breaking into residences and stealing women's undergarments. The defendant argued that the crimes were not sexually motivated because his future intent to use the stolen items for sexual gratification was irrelevant under the statute. The Court of Appeals held that under the Kansas statute, crimes committed either for the immediate or future sexual gratification are sexually violent. 36 Kan. App. 2d at 240. *Chambers* relied on *State v. Patterson,* 25 Kan. App. 2d 245, 251, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998), in which the court held the theft of women's undergarments for sexual gratification in the future was a sexually motivated crime under the circumstances of that case.

Rinke asks this court to interpret *Chambers* and *Patterson* to exclude past sexual gratification. But we draw no such bright line. Nor are we willing to draw a bright line requested by the State. Citing *State v. Castleberry*, 301 Kan. 170, 339 P.3d 795 (2014), the State asks us to borrow from our multiple acts caselaw and hold that the crimes committed after the sex were committed for sexual gratification if no fresh impulse intervened between the sex and the other crimes. But this line of cases relates to multiple acts of the same crime. Here, the crimes as charged and pled to indicate that Rinke's impulse moved from sex to kidnapping and felony murder based on an underlying crime of kidnapping. The State does not persuade us that he acted with the same impulse when he committed murder and kidnapping given the different potential purposes underlying the crimes.

7

Rinke's motivation to kidnap and murder J.P. is not abundantly clear. In one version of events, he acted out of guilt. In another he became angry because J.P. complained about him not using a condom. And other evidence suggests he tried to cover up the uncharged crime of rape. Any of these suggests a fresh impulse and motivation separate from any sexual gratification.

The plain language of K.S.A. 2020 Supp. 22-4902(c)(18) defeats the State's other argument that crimes following sex need be intertwined only with the sex act to be considered crimes performed for sexual gratification. The statutory language does not say that an unlisted nonsex crime need only be temporally or otherwise intertwined with an act that led to sexual gratification. Instead, it requires that Rinke committed felony murder and kidnapping "for the purpose of the defendant's sexual gratification." K.S.A. 2020 Supp. 22-4902(c)(18). No evidence suggests Rinke murdered and kidnapped J.P. for the purpose of a sexual reward, so he would reach the state of being sexually gratified, or because those crimes gave him a source of sexual satisfaction or pleasure. See Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/gratification.

We hold the State did not present substantial competent evidence establishing beyond a reasonable doubt that Rinke committed the crimes of felony murder and aggravated kidnapping for the purpose of his sexual gratification. It thus did not show that Rinke committed a sexually violent crime or that he must register under KORA as a sex offender.

Reversed.

8

LUCKERT, C.J., dissenting: I dissent because substantial competent evidence exists to support a finding that Korrey Raine White Rinke's murder of J.P. was sexually motivated. The evidence shows he beat her while they were engaged in sex, giving rise to a reasonable inference that the violence that led to her death was motivated by his desire to obtain sexual gratification. The murder was thus a sex offense under K.S.A. 2020 Supp. 22-4902(c)(18).

Rinke's statements to police evolved as he rambled through various scenarios. At various times, he admitted to beating J.P. during the sex. At one point an officer asked if Rinke punched J.P. because she complained about having sex without a condom. Rinke affirmed by nodding. The officer then asked, "Is this because you're having sex with her, and she doesn't want you to?" Rinke again nodded. While this alone creates an ambiguity about whether the punching occurred during sex, at another point Rinke volunteered that the victim liked the sex and wanted him to stop only once he started hitting her.

Rinke's statements that he hit her as she started to protest during the sexual acts show he began beating her so he could gain sexual gratification. He told the police the sex continued until he ejaculated. While the beating and violence may have continued even after the sex had ended, the State presented substantial competent evidence showing that the murderous acts began for the purpose of Rinke's sexual gratification.

The district court judge watched Rinke's recorded confession and heard the forensic evidence about the cause of death and other evidence. While the judge did not detail the evidence on which he relied in finding that Rinke committed a sex offense, the

9

record includes substantial competent evidence that supports it. I would affirm his finding.

STEGALL, J. joins the foregoing dissent.