NOT DESIGNATED FOR PUBLICATION

No. 124,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYREE D. HARRIS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed February 3, 2023. Reversed and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Claire Kebodeaux*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Tyree D. Harris Jr. accepted a favorable plea agreement containing a recommendation for probation even though he faced a presumptive prison sentence for his conviction of attempted aggravated robbery. At the time of sentencing, Harris was under house arrest in Missouri and appeared at his sentencing hearing by Zoom. Harris was sentenced by the district court to a term of 136 months' imprisonment and then granted supervised probation for a period of 36 months.

1

Shortly after Harris' sentencing, the district court revoked Harris' probation because it found he had committed a fraud on the court by not telling the court prior to sentencing he had cut off his ankle monitor while being subject to house arrest in Missouri. On appeal, Harris raises multiple issues. Because we find the district erred in revoking his probation, we reverse the revocation of his probation and remand the case with directions to reinstate Harris' probation. With this reversal, the other issues raised by Harris are moot.

FACTUAL AND PROCEDURAL BACKGROUND

Harris pled guilty to one count of attempted aggravated robbery, a severity level 5 person felony, for acts committed in January 2019. The State offered Harris a plea deal that contained a recommendation for probation at sentencing even though he had a pending case awaiting trial in Jackson County, Missouri, for a similar crime. While his Missouri case was pending, Harris was placed on formal house arrest with an ankle monitor until his jury trial in that case.

At Harris' plea hearing in this case, the parties had the following discussion with the district judge:

> "[PROSECUTOR]: Judge, I would ask that the court let the defendant know that the State is not bound by our plea agreement if he fails to appear for his sentencing or if he commits a new crime.
> "THE COURT: [Defense counsel], that is standard. . . . Do you have any legal disagreement with it?
> "[DEFENSE COUNSEL]: Judge, my only issue would be is right now he's checked to see if he has any holds for Missouri and they've told him he does not. But if he would be for some reason picked up for the things mentioned in the case for Missouri and he missed his sentencing, I would not want that—the State to not any longer be bound by their agreement.

2

"THE COURT: Well, I think that—I can tell you what the court will do. If it's something we knew about and then it comes up, we're talking about the unknown, that he gets out and messes up.

"[DEFENSE COUNSEL]: I agree, Judge. If he gets out and would commit a new crime or just blow off the court without being in custody in another jurisdiction for something that we knew about, then I do not have any problem with that."

On August 20, 2021, Harris appeared by Zoom for his sentencing hearing. Defense counsel noted Harris was on house arrest in Missouri for a case alleged to involve the same people and was essentially an ongoing crime occurring in two jurisdictions. The State confirmed it was aware Harris would appear for sentencing via Zoom and asked the district court not to hold it against Harris that he could not appear in person for sentencing due to his house arrest and pending case in Missouri.

The district court sentenced Harris to 136 months' imprisonment and then granted a dispositional departure to probation for 36 months. The district court, after granting Harris probation, stated:

"[P]ut a note in the file or let somebody know that he is currently on house arrest over in Missouri. . . . I'm not sure he's going to be able to personally appear for a little while so to Community Corrections, so needs to be some contact with [defense counsel] so she can provide contact information for Mr. Harris—well, I'll just go ahead and ask the question, either Mr. Harris or [defense counsel], do you guys know, can he, as part of his house arrest over there, could he come over and report to probation here?"

After a short discussion between the district court and defense counsel, Harris responded: "They told me that due to the severity of my case that I'm on permanent, like, house—I'm just confined to the house. I can't go nowhere."

On August 30, 2021—10 days after Harris' sentencing hearing—the State filed a motion for probation revocation and requested a warrant for Harris' arrest. The district

court issued a bench warrant for Harris because Harris had cut off his house arrest ankle monitor in Missouri before his sentencing hearing occurred. At the revocation hearing, Harris' counsel explained:

"Judge, when I found out that Mr. Harris had cut off his house arrest bracelet, I contacted him and asked him if that was accurate and he advised that it was, that he didn't know what to do. He advised that his—the girl who let him live with her who was a significant other at that time . . . let him live with her and then almost immediately after being placed on house arrest at her home, she kicked him out and he had nowhere to go.

. . . .

"He is presently on house arrest from Missouri. They have given him another opportunity. They understood his situation with his girlfriend."

The State contended Harris misled both the district court and his attorney at his sentencing hearing by appearing by Zoom and allowing the parties to believe he was on house arrest when he had, in fact, cut off his house arrest ankle monitor. Harris claimed he did not have much of an opportunity on probation and asked the district court to restart his probation. During the revocation hearing, Harris first claimed he did not cut off his ankle monitor until after his sentencing hearing. Harris then stated he did not remember when he cut off the monitor or whether it happened before or after his sentencing hearing. The State asked the district court to revoke Harris' probation or, in the alternative, impose a sanction and extend probation. The district court continued the revocation hearing and asked the State to get the records from Missouri as to whether Harris was on house arrest on August 20, 2021—the date of his sentencing.

At the continued probation violation hearing, the State presented documentation from the Office of Population Control in Jackson County, Missouri, explaining Harris was placed on house arrest on August 10, 2021, and cut off his ankle monitor on August 15, 2021—five days before his sentencing hearing in this case. The document was not admitted into evidence, but the district judge read part of the document on the record:

4

"[P]ursuant to the order dated August 5th, 2021, entered by [the Jackson County judge], Mr. [Harris] was placed on the county house arrest program on August 10th, 2021. On August 15th, 2021, at 1:42 A.M., Mr. [Harris] cut the strap of his ankle monitor. Attempts to reach him have been unsuccessful and, at this time, Mr. [Harris'] whereabouts are unknown. Therefore, he cannot be properly monitored. Mr. [Harris] is in violation of the county house arrest program rules and his bond conditions. For the above condition—excuse me—for the above reasons, our [Jackson County Office of Population Control] would respectfully urge the [Jackson County] Court to issue a warrant for Mr. [Harris] at this time."

The Missouri court issued a warrant for Harris' arrest.

Harris' counsel conceded Harris had cut off his ankle monitor before the sentencing hearing but argued that when Harris was before the district court at his original revocation hearing, he honestly did not remember whether he had the ankle monitor on during sentencing. Harris then apologized to the district court and explained it was not his intention to lie or mislead the court.

The district court found Harris violated its trust and revoked his probation. The journal entry of judgment identified the reason for Harris' probation revocation as failure to report to his supervising officer.

Harris now asks us to review the revocation of his probation. Additional facts are set forth as necessary.

ANALYSIS

*The District Court Erred in Revoking Harris' Probation*

Harris argues the district court erred in: (1) revoking his probation for conduct that occurred before the district court placed him on probation; (2) failing to apply K.S.A. 2018 Supp. 22-3716(b)(2) and holding an evidentiary hearing; and (3) listing the reason for probation revocation in the journal entry as failure to report to a supervising officer—a violation not supported by the evidence. Harris asks us to remand the case to the district court for new proceedings before a different district judge to place him back on probation.

Our standard of review is unlimited to the extent we are required to determine whether the district court's probation revocation was legally permissible as a matter of law. *State v. Gary*, 282 Kan. 232, 236-37, 144 P.3d 634 (2006). When we review the district court's findings of fact, we review for substantial competent evidence, which is "legal and relevant evidence that a reasonable person might regard as sufficient to support a conclusion." *State v. Rinke*, 313 Kan. 888, 892, 491 P.3d 1260 (2021). To the extent we are required to interpret a statute, our review is unlimited. *Gary*, 282 Kan. at 236.

> *Harris' probation was revoked for conduct occurring before probation was granted.*

Harris argues the State failed to present information justifying the revocation of his probation. Specifically, Harris contends the district court erred in revoking his probation for conduct identified as happening before the district court placed him on probation. That is, Harris could not violate the terms of his probation if the district court had not yet placed him on probation, divesting the district court of jurisdiction to hold a probation violation hearing for an act occurring before Harris' probation term started.

6

Probation is an act of judicial leniency afforded a defendant as a privilege rather than a right. *Gary*, 282 Kan. at 237. Once probation is granted, the defendant has a liberty interest in remaining on probation, and the district court may revoke probation only if the defendant violates the terms and conditions of his or her probation. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). Once the State establishes a probation violation by a preponderance of the evidence, the district court has discretion to revoke unless otherwise limited by statute. See *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022); *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016).

In *Gary*, Gary was sentenced to 11 months in prison but granted probation. About a month later, the State moved to revoke Gary's probation because he had been charged with another crime three days prior to Gary's sentencing. The district court granted the revocation; a panel of our court reversed. On review, our Supreme Court agreed with the panel's conclusion that K.S.A. 2005 Supp. 22-3716(a) "does not authorize warrants to be issued for conduct occurring prior to the grant of probation. . . . [T]he statute's plain language provides that revocation can only occur when there has been a violation of the terms of probation." *Gary*, 282 Kan. at 235. Specifically, the terms of Gary's probation were not yet in place when he committed a new crime three days before sentencing; therefore, Gary did not violate the terms of his probation. 282 Kan. at 235.

But there is an exception to the general rule, though given sparse treatment:

> "'[W]hen misrepresentations have been made to the court by or on behalf of a defendant at the time of granting probation which misrepresentations were a basis for granting probation in the first place, the prior misrepresentations may be grounds for revocation. It has also been held that probation may be revoked for fraudulent concealment of facts and circumstances existing at the time of the hearing at which probation is granted. [Citation omitted.]' [*Swope*,] 223 Kan. at 136." *Gary*, 282 Kan. at 242.

In our review of Kansas caselaw, we have not been able to find any cases discussing the fraudulent concealment of facts. However, "Kansas case law concerning the misrepresentation exception outlined in *Swope* has been limited to instances where *affirmative misrepresentations* have been made to the [district] court upon sentencing and the [district] court has *relied* on those misrepresentations in granting probation to a defendant." *Gary*, 282 Kan. at 244; see *Swope v. Musser*, 223 Kan. 133, 136, 573 P.2d 587 (1977). Harris acknowledges probation can be revoked if the district court relied on an affirmative misrepresentation in granting probation but contends no misrepresentation occurred at the time of sentencing. The State responds Harris made an affirmative misrepresentation to the district court by allowing everyone to believe he was on house arrest in Missouri at the time of his Kansas sentencing.

Harris asserts the district court could not have relied on an affirmative misrepresentation—the status of his house arrest in Missouri—in revoking his probation because the district court placed Harris on probation before asking Harris about the conditions of his Missouri house arrest and whether it would allow him to come to Wyandotte County for his probation monitoring in Kansas. Harris also contends he was not untruthful with the district court because the district judge asked whether the terms of his house arrest would allow him to come to Wyandotte County—which it would not— and no one asked him if he was compliant with all of the terms of his house arrest. Finally, Harris points out he did not have an independent, affirmative obligation to incriminate himself at sentencing by disclosing he had cut off his ankle monitor.

Harris had a liberty interest in remaining on probation once the district court granted probation. Generally, the district court could not revoke Harris' probation unless he violated the terms and conditions of his probation. See *Hurley*, 303 Kan. at 581. However, the district court could revoke Harris' probation if Harris made affirmative misrepresentations which the court relied on when granting probation. See *Gary*, 282 Kan. at 242, 244.

In *State v. McCartney*, No. 95,591, 2007 WL 1309606 (Kan. App. 2007) (unpublished opinion), the district court granted McCartney probation after McCartney misrepresented that his drug-related convictions were an isolated incident. A letter was later discovered suggesting otherwise—McCartney had agreed to help another individual make methamphetamine. The district court explained McCartney had lied at the time of his sentencing hearing and it would not have reinstated probation if the information in the letter had been available at the hearing. The district court found McCartney made an affirmative misrepresentation to the court, revoked his probation, and ordered him to serve his underlying prison sentence. The *McCartney* panel agreed that McCartney had made an affirmative misrepresentation to the district court. 2007 WL 1309606, at *4.

Here, Harris did not make an affirmative misrepresentation to the district court at the time of his sentencing upon which the district court relied in revoking his probation. In fact, Harris' answers to the district court's questions at sentencing were responsive and did not misrepresent he was subject to house arrest in Missouri. The district court viewed Harris' actions as fraud on the court because it was later determined Harris was noncompliant with the terms and conditions of his house arrest in Missouri. Yet, the district court seems to suggest Harris should have committed additional violations of the terms and conditions of his house arrest and appeared in person for sentencing. Harris did not affirmatively lie to the district court as McCartney did. *McCartney* is distinguishable.

Harris appeared by Zoom for his sentencing, and Harris' counsel explained to the district court Harris was on house arrest for his Missouri case. The State responded by explaining:

> "We knew what was happening with Mr. Harris in Missouri and we thought that this was the best resolution on this case. I would just ask for you to follow the plea agreement."

9

The district judge responded, "We knew where he was I think, so . . . it wasn't like he was just on the run." The district court then granted Harris' probation and explained he would not get in trouble for failing to report as he was not expected to flee from his house arrest, but he had to call his probation officer.

At Harris' revocation hearing, the district court explained:

"If on August 20th, you would have explained to [defense counsel] what was going on and she would have explained it to this Court, I—I can't imagine—two things:  One, would have either gone ahead with sentencing or would have continued it to get things worked out, either one.

".  . . [W]hat this Court cannot forget is when explicitly asked whether you could report to probation here in Wyandotte County while you were still on house arrest, you said, no, you could not. And as I said the other day, I've had it both ways, one where parties are allowed to go to probation, go to court hearings, et cetera, while they're on house arrest. There is—and that's usually the general rule. Every once in a while, though, they—the parties say, no, I think, like the Residential Center, you had to be on something for a certain amount of time before you could go to a court hearing. So I've been aware of both situations. It would not have surprised me that you could not, because you're on house arrest, meet with our probation department and get probation started.

"I refuse to believe that you did not know when I asked you those questions or you were sitting there on the video wherever you were at that you had not already cut off the ankle bracelet days before. And then on the 17th, last week, you maintained emphatically that you had not cut it off and then later on, you indicated, well, maybe I—I don't remember. I just really can't buy the idea that you didn't realize as you were proceeding—as we were proceeding with the video sentencing that you didn't have the ankle bracelet on your ankle. I cannot fathom that.

"Your comments were—were correct, I think you did violate the trust of this Court. You performed a fraud on the Court by not telling the truth. You got a heck of a plea offer, a heck of a break for probation. You're an A criminal history. Because of the departure factors were found at that time, the—and it was a dispositional departure, the State does not have to jump through the normal hoops what I would say of a tier one sanction, other—other requirements.

10

"I cannot tolerate, I will never tolerate an outright fraud, lie, disrespect, whatever word you used earlier or words that you used earlier, violating the trust. I just simply do not ever accept that."

But the Fifth Amendment to the United States Constitution protects a person from testifying if doing so would expose the person to criminal liability. Section 10 of the Kansas Constitution Bill of Rights provides the same privileges as the Fifth Amendment. *State v. George*, 311 Kan. 693, 707-08, 466 P.3d 469 (2020); *State v. Delacruz*, 307 Kan. 523, 533-34, 411 P.3d 1207 (2018). Moreover, "the privilege against self-incrimination extends at least through sentencing." *George*, 311 Kan. at 708. We have unlimited review in determining whether an individual can claim a Fifth Amendment privilege against self-incrimination. 311 Kan. at 706.

In *Gary*, our Supreme Court held: "[The] defendant did not have an independent, affirmative obligation to incriminate himself at sentencing by revealing his commission of the crime of attempted robbery 3 days prior to sentencing." 282 Kan. at 251. Likewise, Harris did not have an independent, affirmative obligation to incriminate himself at sentencing by disclosing he had cut off his ankle monitor that was part of his conditions for house arrest in Missouri. The record reflects he was still subject to house arrest in Missouri even though we now know he was not fully compliant. The district court, therefore, exercised its discretion beyond its jurisdiction in revoking Harris' probation for conduct the record reflects occurred before Harris was placed on probation. The affirmative misrepresentation and/or fraudulent exceptions do not apply in this case. We reverse and remand with directions to reinstate Harris' probation.

Because we reverse and remand this matter to reinstate Harris' probation, we determine the remaining issues raised by Harris—the district court failed to hold an evidentiary hearing and the journal entry of revocation stated the reason for revoking his probation was failing to report—are moot. We note the motion to revoke Harris'

11

probation is not in the record on appeal. Even if the motion alleged failure to report as a basis to seek revocation of his probation—as the journal entry of revocation indicates—we observe no evidence that Harris' failure to report was presented to the district court at the time of the revocation hearing. The allegation fails for insufficient evidence.

Reversed and remanded with directions.